UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FCNB BANK, </br></br>  Plaintiff, </br></br> v. </br></br> NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official Capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and CHRISTAL KEY in her official capacity as an Administrative Law Judge of the National Labor Relations Board, </br></br>  Defendants. | Case No. 4:24-cv-1081 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff FCNB Bank ("FCNB") brings this action for declaratory and injunctive relief, alleging as follows:

### INTRODUCTION

1. This action stems from an unlawful attempt by the National Labor Relations Board ("NLRB") to subject FCNB to an administrative proceeding, NLRB case number 14-CA-323612, whose structure violates Article II of the Constitution of the United States.

2. Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L. LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020).

3.  To discharge that responsibility, the President must have the power to remove subordinate officers who assist in carrying out the President's duties. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010).

4.  At least one Federal Court of Appeals has held that this removal power extends to administrative law judges ("ALJs") who "perform substantial executive functions." *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023).

5.  Article II requires that the President "have sufficient control over the performance of [such ALJs'] functions, and, by implication, . . . be able to choose who holds the positions." *Id.* This constitutionally required degree of control is lacking when the ALJs are insulated by "[t]wo layers of for-cause protection"—that is, when the ALJs are removable only for cause, by officials who themselves are removable only for cause. *Id.*; *see Free Enter. Fund*, 561 U.S. at 492–508. The Fifth Circuit therefore held that the removal restrictions for ALJs set forth in 5 U.S.C. § 7521(a) are unconstitutional as applied to ALJs for the Securities and Exchange Commission ("SEC"). *Jarkesy*, 34 F.4th at 465.

6.  The same reasoning applies to the ALJs of the NLRB, including the ALJ assigned to preside over the pending NLRB proceedings against FCNB. Like the SEC ALJs in *Jarkesy*, NLRB ALJs are "inferior officers" who "have substantial authority" within agency investigations and enforcement actions. *Jarkesy*, 34 F.4th at 464; *see also Westrock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). And like SEC ALJs, NLRB ALJs are covered by two layers of removal protection, which insulate them from oversight by the President. *See* 5 U.S.C. §§ 1202(d), 7521(a); 29 U.S.C. § 153(a). So, like the SEC ALJs in *Jarkesy*, NLRB ALJs are unconstitutionally insulated from the President's

oversight, and the Court should declare that the NLRB ALJs' having two layers of removal protection is unconstitutional. *See Jarkesy*, 34 F.4th at 464.

7.  Neither the Eighth Circuit nor the Supreme Court has decided whether the NLRB Members' layer of removal protection is unconstitutional. But the correct answer, given the relevant Supreme Court precedent, the nature of the NLRB Members' functions, and the NLRB's unique structure and statute, is a resounding yes.

8.  The existence of unconstitutional removal protections inflicts twofold harm. It limits the President's constitutional authority, of course. But it also produces an administrative bureaucracy that operates on regulated parties without the constitutionally required "degree of electoral accountability." *Collins v. Yellen*, 141 S. Ct. 1761, 1784 (2021).

9.  Because such removal protections affect not just the President, but also ordinary Americans who must interact with the administrative state, it makes no legal difference whether the President objects to a given statutory limit on his removal powers: "the separation of powers does not depend on the views of individual Presidents, nor on whether 'the encroached-upon branch approves the encroachment.'" *Free Enter. Fund*, 561 U.S. at 497 (citations omitted).

10. When a party is regulated by administrative officials who are shielded by unconstitutional removal protections, Supreme Court precedent teaches that the party is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Id.* at 513.

11. To prevent FCNB from undergoing protracted administrative proceedings before an unconstitutionally structured agency—after which FCNB is unlikely to have a chance to secure meaningful retrospective relief—the Court should stay or enjoin these proceedings, declare that the NLRB's structure violates the separation of powers under Article II of the Constitution, and

permanently enjoin the NLRB and its General Counsel from pursuing unfair labor practice charges against FCNB before agency officials that are unconstitutionally insulated from presidential oversight.

## JURISDICTION AND VENUE

12. This action arises under the Constitution and laws of the United States. This Court has federal question jurisdiction under 28 U.S.C. § 1331 over FCNB's claims that fundamental aspects of the NLRB's structure violate the Constitution. *See, e.g., Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 900 (2023).

13. This Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and under the Court's inherent equitable powers.

14. Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(B) and in this Division under E.D.Mo. L.R. 2.07(A)(1). Defendants are officers of an agency of the United States acting in their official capacity; and a substantial part of the events or omissions giving rise to the claim occurred in Eureka, Missouri; located in this judicial district. Specifically, the administrative proceeding whose constitutionality FCNB is challenging in this case seeks to establish that FCNB's "Code of Ethics," "Conflict of Interest," "Confidential Information," and "Improper Conduct Rules" are unlawful. The administrative complaint asserts an unfair labor practice under 29 U.S.C. § 158(a)(1) because a former FCNB employee was terminated for violating FCNB's "Code of Ethics" and "Improper Conduct" policy in FCNB's employee handbook. The NLRB's requested administrative remedies seek to, *inter alia*, require FCNB "to rescind its Code of Ethics, Conflict of Interest, Confidential Information, and Improper Conduct Rules; to "expunge from its records all disciplines issued to employees pursuant to the foregoing rules and policies; to draft

and send a letter to Rodgers "apologizing to him for his discharge and any hardships or distress it caused"; to require FCNB to "conduct a training session for its managers and supervisors on their obligations under" the NLRA; to require FCNB to permit "a duly-appointed Board agent" to "enter [FCNB]'s facility…for the … purpose of determining" FCNB's "compliance with the notice posting, distribution, and mailing requirements[,]" and unspecified "other relief…to remedy the unfair labor practice." [Compl. 9 A.-H.].

## PARTIES

15. Plaintiff FCNB is a state-chartered banking corporation and financial institution which provides banking, investment, and insurance services to the public, with branches in Steelville, Cuba, Sullivan, North Rolla, South Rolla, and Eureka, Missouri.

16. Defendant NLRB is an administrative agency of the United States, headquartered in Washington, D.C. The National Labor Relations Act ("NLRA") empowers the NLRB to initiate administrative proceedings to prevent unfair labor practices. See 29 U.S.C. § 160.

17. Defendant Jennifer A. Abruzzo is General Counsel of the NLRB. She is sued in her official capacity.

18. Defendant Lauren M. McFerran is Chairman of the NLRB. She is sued in her official capacity.

19. Defendant Marvin E. Kaplan is a Member of the NLRB. He is sued in his official capacity.

20. Defendant Gwynne A. Wilcox is a Member of the NLRB. She is sued in her official capacity.

21. Defendant David M. Prouty is a Member of the NLRB. He is sued in his official capacity.

22.     Defendant Christal Key is an Administrative Law Judge of the NLRB assigned to preside over the NLRB proceedings against FCNB. She is sued in her official capacity.

## FACTS

23.     In or about February 2023, a then-current FCNB employee (the "Charging Party") violated FCNB's Code of Ethics, and the Improper Conduct section of FCNB's Employee Handbook when he accessed other employees' personnel information without prior authorization.

24.     Following discovery of the Charging Party's unauthorized access, on February 24, 2023, FCNB terminated Charging Party's employment for violation of the Code of Ethics and Improper Conduct provision of FCNB's Employee Handbook.

25.     On August 11, 2023, the Charging Party filed a charge with the NLRB alleging that his termination of employment constituted unfair labor practices in violation of the NLRA. The Charging Party subsequently filed an amended charge with the NLRB on April 9, 2024.

26.     The NLRB sought FNCB's response to the Charges. FCNB submitted its position statement and supporting evidence refuting the allegations on September 18, 2023.

27.     On May 20, 2024, the Regional Director for Region 14 issued a complaint in response to the charge, in NLRB case number 14-CA-323612, and notice that an administrative hearing would occur before an ALJ on August 27, 2024.

28.     The administrative complaint challenges FCNB's termination of the Charging Party and FCNB's Code of Ethics, Improper Conduct, Conflict of Interest and Confidential Information policies as violations of the NLRA, and seeks an administrative order requiring FCNB to rescind such policies.

## COUNT I – THE NLRB'S ALJS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

29. FCNB restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

30. NLRB ALJs are "Officers of the United States" under the Constitution's Appointments Clause—not mere employees—because among other things, they hold continuing offices through which they preside over adversarial hearings, receive testimony, shape the administrative record, and prepare proposed findings and opinions. *See Lucia v. SEC*, 138 S. Ct. 2044, 2053–55 (2018); *Jarkesy*, 34 F.4th at 464; *Westrock Servs.*, 366 N.L.R.B. No. 157, slip op. at 1.

31. At the same time, the NLRB may attempt to remove its ALJs "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a). In turn, by statute, Members of the MSPB are removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). And under the NLRA, Board Members are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

32. Given NLRB ALJs' status as "officers" of an executive agency, "they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464.

33. The statutes' provision of at least two layers of removal protection prevents that exercise of presidential authority and thus violates Article II of the Constitution. *See Free Enter. Fund*, 561 U.S. at 492–508; *Jarkesy*, 34 F.4th at 463–65.

34. But for these unlawful removal restrictions, either the ALJ assigned to FCNB's administrative case or the NLRB Members who bear responsibility to supervise and exercise

control over the ALJ would face the prospect of removal by the President based on their conduct during the proceedings.

35. Being subject to unconstitutional agency authority—including proceedings before unconstitutionally insulated agency officials—qualifies as a "here-and-now injury" under well-settled precedent. *Axon Enter.*, 143 S. Ct. at 903 (citation omitted); *see also, e.g., Cochran v. SEC*, 20 F.4th 194, 210 n.16, 212–13 (5th Cir. 2021) (en banc), aff'd and remanded sub nom. *Axon Enter.*, 143 S. Ct. 890.

36. Accordingly, FCNB is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [FCNB is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

37. Moreover, without interim injunctive relief from this Court, FCNB will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

38. FCNB bears a strong likelihood of success on this claim for the reasons detailed above.

39. Yet, unless the NLRB is enjoined from proceeding against FCNB before an ALJ unconstitutionally insulated from presidential oversight, FCNB will be irreparably harmed.

40. Further, if the NLRB Members, on recommendation from the ALJ, issue a final order against FCNB, the constitutional injury will likely be irremediable. The Supreme Court has stated that those subject to an unconstitutional proceeding by improperly insulated administrative agency officials often have no retrospective redress after the fact. *See Collins*, 141 S. Ct. at 1787–89.

41. The harm to FCNB, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted.

42. The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

## COUNT II – THE NLRB'S MEMBERS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

43. FCNB restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

44. The NLRB's Members may be removed by the President only "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

45. Yet the NLRB's Members exercise substantial executive power under the Constitution in administering and enforcing the provisions of the NLRA.

46. For example, Section 10(j) of the NLRA, 29 U.S.C. § 160(j), gives the Board authority to exercise quintessentially prosecutorial power in federal district courts: "The Board shall have the power, upon issuance of [an administrative] complaint as provided in [29 U.S.C. § 160(b)] charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j); *see, e.g. Osthus v. Whitesell Corp.*, 639 F.3d 841, 848 (8th Cir. 2011) (Colloton concurring), *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010) ("Petition power under § 10(j) is prosecutorial in nature[.]").

47. More generally, the NLRB also enforces and implements the NLRA in many ways, including by determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of its unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160.

48. In these and other ways, the NLRB wields substantial prosecutorial, rulemaking, policymaking, and adjudicative authority.

49. The Supreme Court has made clear, moreover, that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of—indeed, under our constitutional structure they must be exercises of—the "executive Power."' *Seila L.*, 140 S. Ct. at 2198 n.2 (citation omitted).

50. Also, the removal protections for NLRB Members are unusually strict. In contrast to more common provisions that permit removal "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Executor v. United States*, 295 U.S. 602, 620 (1935) (quoting 15 U.S.C. § 41), the NLRA permits removal only "for neglect of duty or malfeasance in office," and explicitly prohibits removal for any other cause, like inefficiency, 29 U.S.C. § 153(a).

51. Moreover, unlike other federal agencies, the NLRB has a distinctive structure that divides agency authority between its Members and its General Counsel, who is a politically accountable official responsible for deciding which cases to bring before the NLRB Members. *See* 29 U.S.C. § 153(d); *NLRB v. United Food & Com. Workers Union, Loc. 23*, 484 U.S. 112, 128–29 (1987).

52. The combination of the NLRB's unique structure, the NLRB Members' especially strict removal protections, and their exercise of substantial executive power violates Article II of the Constitution.

53. But for these unlawful removal restrictions, the NLRB Members would face the prospect of removal by the President—including based on their conduct during the proceedings against FCNB.

54. Being subject to proceedings before unconstitutionally insulated agency officials is a "here-and-now injury" justifying pre-enforcement judicial intervention. *Axon Enter.*, 143 S. Ct. at 903 (citation omitted).

55. So, here too, FCNB is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [FCNB is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

56. Moreover, without interim injunctive relief from this Court, FCNB will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

57. FCNB bears a strong likelihood of success on this claim for the reasons detailed above.

58. Yet, unless the NLRB is enjoined from proceeding against FCNB before an NLRB whose Members are unconstitutionally insulated from presidential oversight, FCNB will be irreparably harmed.

59. Further, if the NLRB Members, on recommendation from the ALJ, issue a final order against FCNB, the harm will likely be irremediable because of the difficulty of obtaining retrospective redress for an unconstitutional proceeding by improperly insulated administrative agency officials. *See Collins*, 141 S. Ct. at 1787–89.

60. The harm to FCNB, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted.

61. The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

## PRAYER FOR RELIEF

WHEREFORE, FCNB hereby requests that the Court order the following relief and enter a judgment:

1. Declaring that:

    a. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 U.S.C. § 7521(a), are unconstitutional; and

    b. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB Members, including 29 U.S.C. § 153(a), are unconstitutional.

2. Preliminarily enjoining Defendants from subjecting FCNB to unconstitutionally structured administrative proceedings pending the final resolution of this action;

3. Permanently enjoining Defendants from implementing or carrying out the unconstitutional removal-protection provisions identified above;

4. Awarding FCNB its costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney's fees; and

5. Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Dated: August__, 2024

Respectfully submitted
McMAHON BERGER, P.C.

_____
James N. Foster, Jr.,   ARN 20231MO
Robert D. Younger      ARN 42909MO
Rex P. Fennessey       ARN 58925MO
2730 North Ballas Road, Suite 200
St. Louis, MO  63131
(314) 567-7350 (Telephone)
(314) 567-5968 (Facsimile)
foster@mcmahonberger.com
younger@mcmahonberger.com
fennessey@mcmahonberger.com